UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**H. RANDALL HALL**,

    **Plaintiff,**                         Case No. 2:05-cv-732
                                       JUDGE GREGORY L. FROST
   v.                                 Magistrate Judge Mark R. Abel

**THE SCOTTS COMPANY, et al.,**

    **Defendants.**

## OPINION AND ORDER

This case is before the Court for the consideration of a motion to dismiss (Doc. # 3) filed by Defendants, The Scotts Company and The Scotts Company LLC, a memorandum in opposition (Doc. # 5) filed by Plaintiff, H. Randall Hall, and a reply memorandum (Doc. # 6) filed by Defendants. For the reasons that follow, the Court finds the motion well taken.

### I. Background

From August 1971 through December 20, 2003, Plaintiff, H. Randall Hall, was employed by Defendants, The Scotts Company and The Scotts Company LLC ("Scotts"). Hall, who worked primarily as a forklift driver, suffers from a breathing condition that causes significantly decreased lung capacity. From 2001 through 2003, Hall's respiratory problems were so severe that he was off work for an extended time. His condition led to two incidents that form the basis of this litigation.

First, at his physician's suggestion, Hall requested that Scotts provide him with a respirator/hardhat combination that would cost approximately $1,000 and would enable Hall to work despite his breathing condition. Scotts refused to buy the device for Hall. Scotts alleges

1

that this decision was made because Hall could not safely wear the device while working.  Both parties agree that Scotts denied Hall's requested accommodation in August 2003, which falls outside the statute of limitations for his claims.

Second, in November 2003, Hall then offered to purchase the respirator/hardhat combination himself if he were allowed to wear the device while working.  On December 20, 2003, Scotts told Hall that he could not work while wearing the device.

Hall subsequently filed a discrimination charge with the Equal Employment Opportunity Commission ("EEOC") on October 13, 2004.  The EEOC issued a Right to Sue letter on April 29, 2005, and Hall initiated the instant action on July 29, 2005.  (Doc. # 1.)  His Complaint asserts one federal claim, failure to accommodate in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12111 *et seq.*, and one state law claim, handicap discrimination in violation of Ohio Rev. Code § 4112.01 *et seq.*  (Doc. # 1, at 3-4.)

On September 27, 2005, Scotts filed a motion to dismiss Hall's federal claim.  (Doc. # 3.)  The parties have briefed the issues involved, and Scotts' motion is now ripe for disposition.

## II. Discussion

**A. Standard Involved**

Scotts' filing is styled as a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  Dismissal is warranted under that rule " 'only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.' " *Sistrunk v. City of Strongsville*, 99 F.3d 194, 197 (6th Cir. 1996) (quoting *Hishon v. King & Spalding,* 467 U.S. 69, 73 (1984)), *cert. denied,* 520 U.S. 1251 (1997).  The focus is therefore not on whether a plaintiff will ultimately prevail, but rather on whether the claimant

2

has offered "either direct or inferential allegations respecting all material elements to sustain a recovery under some viable legal theory." *Rippy ex rel. Rippy v. Hattaway*, 270 F.3d 416, 419 (6th Cir. 2001) (quoting *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir. 1988)). In making such a determination, a court must " 'construe the complaint liberally in the plaintiff's favor and accept as true all factual allegations and permissible inferences therein.' " *Sistrunk*, 99 F.3d at 197 (quoting *Gazette v. City of Pontiac,* 41 F.3d 1061, 1064 (6th Cir. 1994)). A court need not, however, accept conclusions of law or unwarranted inferences of fact. *Perry v. American Tobacco Co., Inc.*, 324 F.3d 845, 848 (6th Cir. 2003). The Court may also consider matters of public record, orders, items appearing in the record of the case, and exhibits attached to the Complaint. *Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001).

When, however, a party submits matters outside the pleadings to support a motion to dismiss and the Court does not exclude those items, Rule 12(b) provides that "the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56." Fed. R. Civ. P. 12(b). Because the parties have both submitted affidavits extrinsic to the pleadings, both have treated Scotts' motion to dismiss as one for summary judgment. Hall's memorandum in opposition even explicitly suggests that the motion is a summary judgment motion. This provides notice that Scotts are aware of the nature of their motion, and Scotts have been afforded an opportunity to respond with additional evidence under the summary judgment standard via the reply memoranda (thus satisfying Rule 12(b)). Accordingly, the Court shall treat Scotts' motion as one for summary judgment.

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The Court must therefore grant a motion for summary judgment here if Plaintiff, the nonmoving party who has the burden of proof at trial, fails to make a showing sufficient to establish the existence of an element that is essential to his case. *See Muncie Power Prods., Inc. v. United Techs. Auto., Inc.*, 328 F.3d 870, 873 (6th Cir. 2003) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

In viewing the evidence, the Court must draw all reasonable inferences in favor of Plaintiff, who must set forth specific facts showing that there is a genuine issue of material fact for trial. *Id.* (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)); *Hamad v. Woodcrest Condo. Ass'n*, 328 F.3d 224, 234 (6th Cir. 2003). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Muncie*, 328 F.3d at 873 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Consequently, the central issue is " 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.' " *Hamad*, 328 F.3d at 234-35 (quoting *Anderson*, 477 U.S. at 251-52.)

### B. Rule 56(f) Analysis

Before this Court can address the merits of Scotts' summary judgment motion, it must address a threshold matter that could preclude consideration of the motion at this time. In his memorandum in opposition, Hall has requested under Rule 56(f) that this Court decline to decide Scotts' motion until discovery has been had. The Sixth Circuit Court of Appeals has explained that a court should consider the following relevant factors when addressing a Rule 56(f) motion:

> when the [moving party] learned of the issue that is the subject of the desired discovery; whether the desired discovery would have changed the ruling; how long the discovery period lasted; whether the [moving party] was dilatory in its discovery efforts, and whether the [non-moving party] was responsive to discovery requests.

*Estes v. King's Daughters Medical Center*, 59 Fed. Appx. 749, 754 (6th Cir. 2003) (citing *Plott v. General Motors Corp., Pakcard Elec. Div.*, 71 F.3d 1190, 1196-97 (6th Cir. 1995)). Guided by this standard, the Court concludes that Plaintiff's Rule 56(f) motion is not well taken.

Hall states that he has not "been afforded the opportunity to conduct any depositions or engage in any meaningful discovery exchanges" and that "[a]s a result, [he] has not been able to obtain relevant and material testimony and documents that are only within the possession of [Scotts]." (Doc. # 5, at 7.) Such generic representations, essentially echoed in his counsel's affidavit (Doc. # 5, Ex. B, Bennett Aff. ¶ 4), do not indicate what specific information Hall would hope to uncover. *See Mitchell v. Biomagnetic Resonance, Inc.*, 114 F.3d 1118, 1997 WL 259367, at *3 (6th Cir. 1997) (unpublished table decision) (requiring a party to support a Rule 56(f) motion by citing to specific evidence sought to be discovered); *Canaday v. Kelley*, 37 F.3d 1498, 1994 WL 567512, at *6 (6th Cir. 1994) (unpublished table decision) (requiring "requisite particularity" and "specific information" to support a Rule 56(f) motion). Although counsel targets pertinent areas he could explore, he does not sufficiently detail the results he intends to uncover. Accordingly, the Court in its discretion **DENIES** Hall's request to delay deciding Scotts' motion until additional discovery is had.

### C. Summary Judgment Analysis

Turning to the merits of Scotts' motion, the Court recognizes that Scotts has presented a two-part theory attacking Hall's ADA claim. Scotts first asserts that Hall's federal claim is time

5

barred in regard to the August 2003 decision because Hall did not timely file with the EEOC. Scotts then asserts that Hall cannot save the claim by relying upon the continuing violations theory, or doctrine. This Court shall address each theory supporting dismissal.

In order to file a federal employment discrimination action, the plaintiff must file a charge of discrimination within 300 days of the discriminatory act. *Benge v. General Motors Corp.*, 267 F. Supp. 2d 794, 799 (S.D. Ohio 2003) (citing 42 U.S.C. § 12117(a)). It is undisputed that the events occurring in August 2003 are outside the statute of limitations absent an exception that would sweep those events within the 300-day filing period.

Hall asserts that his claim is not time barred under the "continuing violations theory." The Sixth Circuit has stated that the general rule is "statutes of limitations ... are triggered at the time the alleged discriminatory act occurred." *E.E.O.C. v. Penton Indus. Publ'g Co., Inc.,* 851 F.2d 835, 837-38 (6th Cir. 1988). However, the "continuing violations theory" provides an equitable exception to this general rule. *Burzynski v. Cohen*, 264 F.3d 611, 617 (6th Cir. 2001). The continuing violations theory states that " 'discriminatory incidents which occur beyond the limitations period are actionable where a plaintiff ... challenges not just one incident ... but an unlawful practice that continues into the limitation period.' " *Id*. at 618 (quoting *Haithcock v. Frank*, 958 F.2d 671, 677 (6th Cir. 1992)). *See also Deck v. City of Toledo*, 56 F. Supp. 2d 886, 893 (N.D. Ohio 1999) (citing *Hull v. Cuyahoga Valley Joint Vocational School Dist. Bd. Of Educ.*, 926 F. 2d 505, 510-11 (6th Cir. 1991)) ("where there is an ongoing continuous series of discriminatory acts, they may be challenged in their entirety if one of those discriminatory acts falls within the limitations period").

In discussing the continuing violations theory, the Sixth Circuit has explained that there

6

are two possible forms or categories of violations.  The first category is "where there is some evidence of present discriminatory activity giving rise to a claim of a continuing violation." *E.E.O.C,* 851 F.2d at 838.  This category requires that at least one of the discriminatory acts occur within the statute of limitations.  The second category of the continuing violations theory arises where there is "a longstanding and demonstrable policy of discrimination."  *Id.*

      Hall alleges that his claim falls within the first category for establishing a continuing violation.  Of import to Hall's theory is the United States Supreme Court's decision in *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101 (2002), which precludes plaintiffs "from establishing a continuing violation exception by proof that the alleged acts of discrimination occurring prior to the limitations period are sufficiently related to those occurring within the limitations period."  *Sharpe v. Cureton*, 319 F.3d 259, 268 (6th Cir. 2003) (citing *Morgan*, 536 U.S. at 113).  The effect of the high court's holding is that "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges." *Shea v. Rice*, 409 F.3d 448, 455 (D.C. 2005) (quoting *Morgan*, 539 U.S. at 113).  The end result is that "[t]he existence of past acts and the employee's prior knowledge of their occurrence ... does not bar employees from filing charges about related discrete acts so long as the acts are independently discriminatory and charges addressing those acts are themselves timely filed." *Morgan*, 539 U.S. at 113

      Here, Hall asserts that Scotts' two refusals constitute a series of related acts–a statutorily mandated "interactive process"–that are not discrete acts but instead comprise a single course of continuous discriminatory conduct culminating with the December 2003 denial of his requested accommodation.  Although Hall's second request was slightly different from his first request in

that Hall eventually offered to pay for the respirator/hardhat device himself, the distinction is without much import here.   The focus is on the company's conduct, not on the manner in which Hall made the same request for accommodation in two different guises.

Notably, Hall has submitted an affidavit to support his federal claim, but although that document notes Scotts' initial refusal, it does not touch upon the basis for the refusal.  (Doc. # 5, Ex. A, Hall Aff. ¶¶ 2-3.)  The undisputed evidence before the Court therefore indicates that Scotts' two denials of the requested accommodations turned on safety concerns and not on the issue of undue hardship.  (Doc. # 3, Ex. A, Oiler Aff. ¶¶ 6-8.)   This fact diminishes a potentially distinguishing factor that might have transformed the second denial into a discrete act.  If Scotts' first denial turned on, for example, alleged undue hardship to the company, then Hall's later offer to purchase the respirator/hardhat device himself could arguably be regarded as a distinct accommodation.

Hall seeks to persuade this Court that the difference in his two rejected requests is important–i.e., that his offer to pay for the device following the company's refusal to pay for the device–represents an ongoing "interactive process" or dialogue between Hall and Scotts that serves to save his claim.  But, as noted, the ultimate accommodation sought–the dispositive point–is the critical question of whether Hall can safely wear the respirator at work, not who pays for it.  In other words, there has been one decision by Scotts that is potentially discriminatory, and that is refusing to allow Hall to wear the respirator mechanism at work.  The effects of that specific decision continued beyond August 2003, but there is not an ongoing practice of discrimination that can preserve the claim.  Hall's simply asking a second time does not renew or revive his claim when there is ultimately but one act by Scotts.

This is not a case like the pre-*Morgan* case of *Alexander v. Local 496, Laborers' International Union of North America*, 177 F.3d 394 (6th Cir. 1999). *Alexander* presented a situation in which a union had a continuing practice, derived in part from a memorialized rule, of excluding African-Americans from membership. The Sixth Circuit recognized the application of the continuing violations theory because there was "a series of related discriminatory acts and an established policy of discrimination." *Id*. at 408. Nor is this a case like *Hall v. Ledex, Incorporated*, in which the appellate court held that a claim of unequal-wage discrimination was actionable where each paycheck the plaintiff received constituted a separate discriminatory act forming a continuous violation of Title VII and the Equal Pay Act. 669 F.2d 397, 398-99 (6th Cir. 1982). *See also Bazemore v. Friday*, 478 U.S. 385 (1986). And this is not a case like *Curry v. U.S. Postal Service*, in which the plaintiff's claim was based on her being continually required to lift a tray, with each instance of lifting constituting a failure to accommodate, which resulted in her missing work and consequent discipline for her absences. 583 F. Supp. 334, 343 (S.D. Ohio 1984). These three foregoing factual scenarios stand in contrast to the instant post-*Morgan* case in which there is functionally one decision toward one individual, and Hall does not even assert that a policy of discrimination exists.

Viewing the events in terms of the actual accommodation sought (i.e., what would have enabled Hall to work was wearing the respirator mechanism, regardless of who paid for it), the Court cannot say that these facts present a viable claim. Scotts' initial refusal to approve Hall's requested accommodation was a discrete act necessitating the filing of a timely EEOC charge. *See Elmenayer v. ABF Freight Sys., Inc.*, 318 F.3d 130, 134-35 (2d Cir. 2003) ("an employer's rejection of an employee's proposed accommodation for religious practices does not give rise to

9

a continuing violation. Rather, the rejection is the sort of 'discrete act' that must be the subject of a complaint to the EEOC within 300 days"). The *Elmenayer* court explained:

> The rejection of a proposed accommodation is a single completed action when taken, quite unlike the "series of separate acts" that constitute a hostile work environment and "collectively constitute" an unlawful employment practice. Although the *effect* of the employer's rejection continues to be felt by the employee for as long as he remains employed, that continued effect is similar to the continued effect of being denied a promotion or denied a transfer, denials that *Morgan* offered as examples of a discrete act.

*Id*. at 135 (citations omitted). In relying on *Elmenayer*, however, the Court must recognize that the Second Circuit panel explicitly did not opine on "what the effect would be if the employee renews the request for an accommodation." *Id*. at 135.

Other courts provide guidance on the "renewed request" issue. Having reviewed these cases, the Court concludes that permitting Hall to bootstrap an expired claim beyond the statute of limitations would ignore the policy behind the statute of limitations. *Cf. Harper v. BP Exploration & Oil, Inc.*, 134 F.3d 371, 1998 WL 45487, at *3-4 (6th Cir. 1998) (unpublished table decision) (declining to permit revival of stale claim based on assumed subsequent development of continuous pattern of discrimination). It would enable any plaintiff such as Hall to evade a statute of limitations/filing requirement simply by asking for an accommodation after a previous discriminatory act. *See Conner v. Reckitt & Coleman, Inc.*, 84 F.3d 1100, 1102 (8th Cir. 1996).

The Third Circuit Court of Appeals has discussed this latter point specifically. In the post-*Morgan* case of *Zdziech v. DaimerChrysler Corporation*, 114 Fed. Appx. 469 (3d Cir. 2004), that appellate court addressed a factual scenario in which a plaintiff alleged that he had been placed on disability leave in violation of the ADA. The plaintiff had repeatedly sent letters

to his employer asking that he be permitted to return to work, but his employer declined to grant the requests. The district court rejected his theory that each letter, including his last letter, constituted "a new and distinct act of discrimination which was within the 300-day limitations period for filing an EEOC complaint." *Id*. at 471. On review, the Third Circuit Court of Appeals similarly rejected this rationale, explaining:

> The failure to act upon receipt of a letter requesting reinstatement is not a discrete act of discrimination and does not restart the statute of limitations. ... To permit a person to reset the statutory requirements for the timely filing of a complaint merely by writing a new letter to his former employer would clearly vitiate the intent behind the 300-day time limit.

*Id*. at 472. That court also rejected the theory that the employer's repeated refusals constituted a continuing act of ongoing discrimination, stating that the misapplication of such a continuing violation theory is contrary to the policy behind a statute of limitations and would effectively eviscerate the applicable statute of limitations. *Id*. This Court agrees with the Third Circuit's reasoning and regards Hall's second request as an impotent attempt at salvaging a time-barred claim.

For the foregoing reasons, Hall is barred from asserting his federal claim. This leaves Hall's remaining handicap discrimination claim. Having dismissed his sole federal claim, the Court presumptively should not address this state law claim. *See Jackson v. Heh*, 215 F.3d 1326, 2000 WL 761807, at *8 (6th Cir. 2000) (unpublished table decision) (referencing 28 U.S.C. § 1367 and stating that "[w]here, as here, a federal court has properly dismissed a plaintiff's federal claims, there is a 'strong presumption' in favor of dismissing any remaining state claims unless the plaintiff can establish an alternate basis for federal jurisdiction.") (citing *Musson Theatrical, Inc. v. Fed. Express Corp.*, 89 F.3d 1244, 1255 (6th Cir. 1998)). Hall has failed to

11

suggest any justification or alternative basis for exercising jurisdiction over his state law claim should his federal claim fail.  Accordingly, the Court in its discretion declines to exercise its supplemental jurisdiction over Hall's remaining state law claim, *see* 28 U.S.C. § 1367(c)(3) and (4), and dismisses said claim without prejudice.

### III. Conclusion

For the foregoing reasons, the Court **GRANTS** Scotts' motion.  (Doc. # 3.)  Scotts is entitled to judgment as a matter of law on Hall's federal claim.  His state law claim is dismissed without prejudice.  The Clerk is instructed to enter judgment accordingly.

**IT IS SO ORDERED.**

　　　　　　　　　　　　　　　　　　/s/   Gregory L. Frost
　　　　　　　　　　　　　　　　　　GREGORY L. FROST
　　　　　　　　　　　　　　　　　　UNITED STATES DISTRICT JUDGE